UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARMANDO BECERRA VARGAS, | § § § | |
| Petitioner, | § § | |
| v. | § § | SA-25-CV-1023-FB (HJB) |
| PAMELA BONDI, United States Attorney General; KRISTI NOEM, Secretary of the United States Department of Homeland Security; SYLVESTER ORTEGA, Field Office Director for Detention and Removal, United States Immigration and Customs Enforcement; REYNALDO CASTRO, Warden, South Texas Detention Complex; and TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, | § § § § § § § § § § § § § § | |
| Respondents. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Armando Becerra Vargas's Petition for Habeas Corpus (Docket Entry 1), and Motion for Temporary Restraining Order and Preliminary Injunction (Docket Entry 10), both of which have been referred to the undersigned for consideration pursuant to 28 U.S.C. § 636(b).  (*See* Docket Entry 2.)  For the reasons set out below, I recommend that the Petition be **GRANTED IN PART** and **DENIED IN PART**, and the motion for temporary restraining order and preliminary relief (Docket Entry 10) be **DISMISSED AS MOOT**.

**I.   Background.**

The relevant facts in this case are not disputed.  Petitioner is Mexican citizen who entered the United States in July of 2002, without inspection.  (Docket Entry 8, at 3.)  He was arrested for

speeding 10 years later, on June 28, 2012, and was taken into custody by Immigration and Customs Enforcement ("ICE"), pursuant to a Form I-200 Warrant for Arrest of Alien. (*See* Docket Entry 9-2, at 2; 9-3, at 2–4.) While in ICE custody, Petitioner was issued a Form I-862 Notice to Appear, which charged that he was "subject to removal from the United States pursuant to . . . [§] 212(a)(6)(A)(i) of the [INA], . . . [as] an alien present in the United States without being admitted." (*See* Docket Entry 9-1, at 2.) That same day, ICE issued a Form I-286 Notice of Custody Determination. (*See* Docket Entry 9-2.) It stated that, pursuant to § 236 of the INA—codified as 8 U.S.C. § 1226—Petitioner was "released on [his] own recognizance" during the pendency of his removal proceedings and until such time that a final order of removal is issued, if ever. (*See id.* at 3.) Petitioner also was issued a Form I-220A Order of Release on Recognizance, which released Petitioner pursuant to § 1226, subject to his complying with several conditions. (*See id.* at 4.)

For more than a decade Petitioner has lived in the United States and has complied with all of the conditions of his release order. (*See* Docket Entry 8, at 3; Docket Entry 9-2, at 4.) On June 10, 2025, during one of his routine check-ins with ICE, Petitioner was taken into custody without explanation. (*See* Docket Entry 1, at 6; Docket Entry 8, at 3.) Petitioner requested and received a custody review hearing with an immigration judge on August 11, 2025. (*See* Docket Entry 1, at 3; Docket Entry 8, at 3.) The immigration judge held that Petitioner was not eligible for bond under § 1226(a), because Petitioner is "an applicant for admission," and therefore "subject to mandatory detention" pursuant to 8 U.S.C. § 1225(b)(2). (*See* Docket Entry 8-1, at 3.)

Petitioner filed his petition for a writ of habeas corpus on August 19, 2025, (*see* Docket Entry 1), and moved for a temporary restraining order on September 24, 2025 (*see* Docket Entry 10). The undersigned held a status hearing on October 1, 2025, establishing deadlines for the parties to provide briefing on Petitioner's motion and setting the matter for a hearing. (*See* Docket

Entry 13.) The undersigned held the hearing on November 7, 2025, and took both the motion and the habeas petition under advisement.

**II.     Discussion.**

The parties dispute both whether the Court has jurisdiction to order the relief Petitioner has requested, and whether Petitioner is entitled to that relief on the merits. Accordingly, this Report and Recommendation discusses the Court's jurisdiction before turning to the merits. *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first.").

**A.     *Jurisdiction*.**

As a general matter, this Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2241. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."). Respondents argue, however, that provisions of the Immigration and Nationality Act ("INA")—specifically 8 U.S.C. §§ 1252(g), (a)(5), and (b)(9)—strip the Court of jurisdiction here. The potential jurisdictional impact of these provisions is considered below.

1.     *Section 1252(g)*.

Section 1252(g) deprives district courts of jurisdiction over challenges to "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" against aliens. 8 U.S.C. § 1252(g). Respondents contend that the Court lacks jurisdiction under this provision because Petitioner's "detention arises from the decision to commence . . . . removal proceedings." (Docket Entry 8, at 13 (emphasis added).)

Contrary to Respondents' contention, the Supreme Court has not read § 1252(g)'s language "to sweep in any claim that can technically be said to "arise from" the three listed actions of the

3

Attorney General." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *4 (W.D. Tex. Sept. 22, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). "Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Lopez-Arevelo*, 2025 WL 2691828, at *4. As Petitioner points out in his reply, he does not challenge any decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders; he "has not, and is not, challenging the commencement of proceedings, nor ICE's initial detention of him, nor ICE's removal proceedings at all." (Docket Entry 9, at 2.) Petitioner challenges only his ongoing detention. As Judge Cardone explained in *Lopez-Arevelo*, "[s]uch claims are not barred by § 1252(g)." 2025 WL 2691828, at *5.

    2.    *Sections 1252(a)(5) and (b)(9)*.

Section 1252(b)(9) provides that "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States . . . shall be available only in judicial review of a final order [of removal]." *See* 8 U.S.C. § 1252(b)(9). And such challenges to final orders of removal, in turn, may only be made in "a petition for review filed with an appropriate court of appeals." *See id.* § 1252(a)(5). According to Respondents, "[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue . . . arising from any removal-related activity can be reviewed only through the [petition-for-review] process." (Docket Entry 8, at 15 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1021 (9th Cir. 2016) (emphasis in original).)

Respondents once again read too much into these provisions. With respect to § 1252(b)(9) the Supreme Court in *Jennings* expressly rejected an overbroad reading of "arising from" as "uncritical literalism" that leads "to results that no sensible person could have intended." 583 U.S. at 293–94 (citation modified). Indeed, *Jennings* described the "expansive interpretation of § 1252(b)(9)" proposed by Respondents as "absurd," and inevitably "lead[ing] to staggering

4

results." *Id*. at 293.  Ultimately, *Jennings* concluded that § 1252(b)(9) does not apply where a petitioner is challenging their ongoing detention, as opposed to "asking for review of an order of removal," or "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined." *Id*. at 294; *see also Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950096, at *4 n.2 (S.D. Tex. Oct. 3, 2025) (discussing *Jennings*).  Here, because Petitioner challenges only his ongoing detention during the pendency of his removal proceedings, "§ 1252(b)(9) does not present a jurisdictional bar." *See Jennings*, 583 U.S. at 295.

The language in § 1252(a)(5) does not change the jurisdictional analysis.  That provision merely "specifies that the only means of obtaining judicial review of a final order of removal, deportation, or exclusion is by filing a petition with a federal court of appeals." *Lopez-Arevelo*, 2025 WL 2691828, at *3.  Where, as here, "there is no final removal order and a habeas petitioner's 'arrest and detention claims are independent of any future removal order,' § 1252(a)(5) does not prevent the district court from hearing such claims." *Lopez-Arevelo*, 2025 WL 2691828, at *3.

\* \* \*

Based on the foregoing, the provisions identified by Respondents do not deprive the Court of jurisdiction to issue the habeas relief that Petitioner seeks.

### B.   *The Merits.*

As noted above, both Petitioner's habeas action (Docket Entry 1) and his motion for preliminary injunction (Docket Entry 10) are included in the District Court's referral of pretrial matters to the undersigned for consideration (*see* Docket Entry 2).  At the hearing on the preliminary injunction, the parties agreed that the preliminary relief sought is identical, albeit temporary, to the ultimate relief sought in the habeas petition, and that the merits of the petition have been fully briefed and present purely legal issues for the Court's resolution.  Accordingly, the

undersigned proceeds directly to the merits of the habeas petition and does not address separately the motion for preliminary injunctive relief. *See Covarrubias*, , 2025 WL 2950097, at *5 (granting petition for writ of habeas corpus and denying motion for identical preliminary relief as moot); *Buenrostro-Mendez*, 2025 WL 2886346, at *4 (same).

The petition for habeas corpus presents both a statutory and a constitutional basis for relief. (*See* Docket Entry 1.) At the November 7, 2025, hearing, the parties agreed that, if Petitioner succeeded on his statutory argument, it would be unnecessary for the Court to reach the constitutional issues. Because the Court should find that Petitioner is entitled to relief on the basis of the statute, statutory matter, this Report and Recommendation does not include any further discussion of the parties' constitutional dispute. It does, however, separately consider the type of relief to which Petitioner should be entitled.

        1.      *Whether Petitioner Is Entitled to Relief Based on the INA.*

Petitioner's statutory challenge to his ongoing detention turns on whether 8 U.S.C. § 1225(b)(2) or § 1226(a) applies in his case. *See Buenrostro-Mendez*, 2025 WL 2886346, at *2. If § 1225(b)(2) applies, then Petitioner's detention is mandatory during the pendency of his removal proceedings. *See id.* § 1225(b)(2)(A) ("[T]he alien *shall* be detained. . . .") (emphasis added). If § 1225(b)(2) does not apply, then § 1226(a) does, which would make his detention discretionary, and entitled him to a bond redetermination by an immigration judge. *See id.* § 1226(a) ("[A]n alien *may* be arrested and detained. . . .") (emphasis added); *Covarrubias*, 2025 WL 2950097, at *2 ("[N]oncitizens detained under [§] 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under [§] 1226(a) are entitled to a bond hearing.").

In pertinent part, §1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is

6

not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." There is no doubt that Petitioner qualifies as an "an applicant for admission" under this section. Under the INA, "applicant for admission" is defined to include any "alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Petitioner entered the United States in 2002 without inspection; thus, he was present in the United States without having been admitted when ICE took him into custody on June 10, 2025. Accordingly, Petitioner is unquestionably an "applicant for admission."

The relevant question for the Court is whether all applicants for admission are subject to mandatory detention under § 1225(b)(2)(A), or only an individual applicant whom the examining immigration officer determines to be "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted." Relying on a recent decision from the Board of Immigration Appeals ("BIA"), Respondents endorse the former interpretation, arguing that under § 1252(b)(2), mandatory detention applies to all applicants for admission, including Petitioner. (*See* Docket Entry 8, at 2 (citing *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025)).) As Respondents concede, this is an abrupt departure from the Government's "longstanding interpretation" that § 1226(a), not § 1225(b)(2), applies to applicants for admission who are already present in the Country. *See Buenrostro-Mendez*, 2025 WL 2886346, at *2 (citation modified). Petitioner opposes this new interpretation of the scope of § 1252(b)(2), and asks either that he be released or that he be afforded a bond redetermination hearing pursuant to § 1226(a). (*See* Docket Entry 1, at 9–16.)

This is not a matter of first impression. Numerous courts have rejected Respondents' broad new interpretation of § 1252(b)(2). *See Lopez-Arevelo*, 2025 WL 2691828, at *7 (collecting cases) include the majority of the district courts in the Fifth Circuit—and all the courts in this District— that have considered the issue. *See, e.g.*, *Guerrero v. Noem*, No. AU-25-CV-1334-RP (W.D. Tex.

Oct. 27, 2025); *Pereira-Verdi v. Lyons*, No. SA-25-CV-1187-XR (W.D. Tex. Oct. 10, 2025); *Covarrubias*, 2025 WL 2950097; *Buenrostro-Mendez*, 2025 WL 2886346; *but see Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H (N.D. Tex. Oct. 24, 2025). Accordingly, the Court can resolve this issue without "repeat[ing] the 'well-reasoned analyses' contained in these opinions," and "instead simply not[ing] its agreement." *See Covarrubias*, 2025 WL 2950097, at *3 (quoting *Buenrostro-Mendez*, 2025 WL 2886346, at *3). Should the District Court wish to consider the issue at greater length, however, two points, discussed below, persuasively militate against Respondents' position.

First, Respondents' interpretation of § 1252(b)(2) does not accord with the plain language of the statutory text or the settled rules by which it is to be interpreted. The plain language of § 1252(b)(2) applies its mandatory-detention provision only when the applicant for admission is "seeking admission." *See* 8 U.S.C. § 1252(b)(2)(A). At the hearing before the undersigned, Respondents argued that "seeking admission" and being an "applicant for admission" are synonymous. But this argument is contrary to established canons of statutory interpretation that "a variation in terms suggests a variation in meaning," and that "[w]ords are to be given the meaning that proper grammar and usage would assign them." *Covarrubias*, 2025 WL 2950097, at *4 (quoting *Antonin Scalia & Bryan A. Garner*, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170, 140 (2012)). "Seeking" is a "present-tense, or current, ongoing action, and varies materially from the passive state of being an applicant." *Covarrubias*, 2025 WL 295007, at *4. And the INA specifically defines "admission" as "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13)(A). When Petitioner was taken into custody, on June 10, 2025, he was not "seeking admission" because he was not seeking "lawful entry into the United States," let alone after inspection and authorization

8

by an immigration officer. Accordingly, Respondents' interpretation of § 1252(b)(2) does not accord with the language of the statute.

Second, the Supreme Court's discussion of the relationship between §§ 1225 and 1226 in *Jennings* seriously calls Respondents' interpretation into question. In that case, the Court summarized that relationship as follows:

> U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added). The distinction drawn in *Jennings*, between those immigrants "seeking admission into the country," and those who are "already in the country," aligns perfectly with the text-based analysis set out in the preceding paragraph.[1]

Accordingly, both for the reasons specifically identified above, and for those reasons expounded upon by the other courts of this district, the majority of the district courts in the circuit, and the vast majority of the courts around the country, Respondents' argument that § 1252(b)(2) applies to all applicants for admission, including Petitioner, should be rejected.

    2.    *The Appropriate Relief*.

In light of the discussion above, it is clear that Petitioner's petition for habeas corpus should be granted. The only remaining question is how the Court should fashion relief. As previously mentioned, Petitioner requests that the Court order either his immediate release, or alternatively that he be afforded a bond redetermination hearing before an immigration judge. At the hearing before the undersigned, Respondents argued that the appropriate relief, if were petition is granted, would be to order Petitioner's immediate release, rather than order an immigration judge

---

[1] Even if the discussion in *Jennings* is considered *obiter dicta*, courts are "generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024).

to hold hearing. As counsel for Respondents explained, if this Court ordered a hearing, it would require the immigration judge to do that which, in light of BIA precedent, the judge would not believe he had any authority to do. *See Matter of Yajure-Hurtado*, 29 I&N Dec. at 229 ("The Immigration Judge . . . lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under . . . § 1225(b)(2)(A)."). Petitioner did not object to Respondents' request, agreeing that immediate release would be appropriate. In light of positions stated by the parties at the hearing, the Court should simply order Petitioner's release if it grants the writ.

Petitioner also requests for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. This request should be denied. "[T]he EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024).

### III.  Conclusion and Recommendation.

For the reasons stated in this report, I recommend that Petitioner's Petition for Habeas Corpus (Docket Entry 1) be **GRANTED IN PART**, and that Respondents be **ORDERED** to release Petitioner from their custody. Petitioner's request for attorney's fees should be **DENIED**.

I further recommend that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Docket Entry 10) be **DISMISSED AS MOOT**. *See Covarrubias*, 2025 WL 2950097, at *5; *Buenrostro-Mendez*, 2025 WL 2886346, at *4.

### IV.  Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Typically, parties must file any written objections to a Report and

Recommendation **within 14 days** after being served with a copy of the same. However, that time period may be modified by the Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In light of the deprivation of liberty at issue, and the undersigned's recommendation that Petitioner be released, the deadline is shortened as follows: the parties must file any written objections **within seven days** after their receipt of a copy of this Report and Recommendation.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on November 12, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge